UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

KYLE BRAGG, AS TRUSTEE, AND THE TRUSTEES
OF THE BUILDING SERVICE 32BJ Fund,

                            Plaintiffs,

                  -against-

AIRWAY CLEANERS, LLC,

                            Defendant.

21-CV-9587 (VF)

**OPINION & ORDER**

-----------------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge**

      Plaintiffs Kyle Bragg, as Trustee, and the Trustees of the Building Service 32BJ Health Fund (the "Fund," and collectively, "Plaintiffs"), commenced this action against Defendant Airway Cleaners, LLC ("Airway") on November 18, 2021, pursuant to the Employee Retirement Income Security Act ("ERISA") Sections 502(a)(3) and 515, and the Labor-Management Relations Act of 1947 ("LMRA") Section 301, seeking unpaid contribution payments to an employee health fund from July 1, 2021, to the date any judgment is issued. See ECF No. 1 ("Compl.") ¶¶ 11-22.

      The Fund and Airway have each moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, the Fund's motion is **GRANTED** and Airway's cross-motion is **DENIED**.

1

**BACKGROUND**

A. **Factual Background**[1]

The Fund is a jointly administered, multi-employer, labor-management trust fund established and maintained pursuant to various collective bargaining agreements in accordance with Section 502(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5). Fund R. 56.1 Statement ¶ 1. The Fund is an employee benefit plan within the meaning of Sections 3(2), 3(3), and 503(d)(1) of ERISA, 29 U.S.C. §§ 1002(2), (3) and 1132(d)(1); and a multi-employer plan within the meanings of Sections 3(37) and 515 of ERISA, 29 U.S.C. §§ 1002(37) and 1145. Id. The purpose of the Fund is to receive contributions from employers who are parties to collective bargaining agreements with the Service Employees International Union, Local 32BJ (the "Union"), to invest and maintain those monies, and to distribute health-insurance benefits to employees eligible to receive those benefits. Id. ¶ 2. Kyle Bragg, at the time the complaint was filed, was Trustee of the Fund. Id. ¶ 3. Airway is a private corporation that provides cleaning services at LaGuardia and John F. Kennedy ("JFK") airports in New York. Airway R. 56.1 Statement ¶ 1.

Airway is party to a collective bargaining agreement ("CBA") with the Union, covering certain individuals employed by Airway at LaGuardia and JFK airports. Fund R. 56.1 Statement

---

[1] Unless otherwise noted, the facts recounted herein reflect the undisputed, material facts contained in the parties' Local Civil Rule 56.1 Statements of Facts. See ECF No. 46 ("Fund R. 56.1 Statement"); ECF No. 54 ("Airway R. 56.1 Statement"). Any facts contested or challenged by pointing to admissible evidence in the record are considered to be disputed and are not included in the facts recounted herein. However, facts that are not contradicted with admissible evidence are deemed admitted. See Giannullo v. City of N.Y., 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."); see also N.Y. State Teamsters Conf. Pension & Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 648 (2d Cir. 2005) (finding it within the district court's discretion to deem the moving party's statement of material facts admitted where the opposing party "offered mostly conclusory denials" and "failed to include any record citations").

¶ 4; see also ECF No. 46-2 (the "CBA"). Under Article 12.1(c) of the CBA, Airway is required to make a monthly $649.00 contribution to the Fund for health insurance, for each "eligible" employee at LaGuardia and JFK airports. Fund R. 56.1 Statement ¶ 5; Airway R. 56.1 Statement ¶ 3. The CBA defines an employee's eligibility, and contributions to the Fund from Airway were required beginning July 1, 2021, "for all employees currently working thirty (30) hours a week or more, performing covered work, and who worked thirty (30) hours a week or more as of December 30, 2020." Fund R. 56.1 Statement ¶¶ 7-8 (quoting CBA at 6); see also Airway R. 56.1 Statement ¶ 4.

The Fund promulgated "Rules and Procedures for Enforcement of Employers' Reporting and Payment Obligations Effective for Delinquencies Arising With Respect to Contribution Periods Beginning on or After January 1, 2015" (the "Collection Policies"). Fund. R. 56.1 Statement ¶ 13; see also ECF No. 46-4. In the CBA, Airway agreed to "remit contributions" to the Fund in accordance with the policies and procedures established in the Collection Policies. CBA at 8.[2] Under the Collection Policies, "[f]ailure to provide complete remittance reports to identify the employees for whom . . . contributions are remitted, on or before the due dates defined in [Section] I" is considered a "delinquency." ECF No. 46-4 at 3 (¶ E). "Failure to report status changes with respect to employees who have been terminated, suspended or otherwise have had their status changed to one in which the employer is not obligated to contribute" is also considered a "delinquency" under the Collection Policies. Id. (¶ F) Section I of the Collection Policies requires contributions from the employer to be "remitted electronically on or before the

---

[2] While the Court is "not required to consider what the parties fail to point out" on a motion for summary judgment, it "has discretion to conduct an assiduous review of the record" and rely on facts contained therein. Orbetta v. Dairyland USA Corp., No. 20-CV-9000 (JPC), 2023 WL 6386921, at *7 (S.D.N.Y. Sept. 30, 2023) (citation and internal quotation marks omitted).

20th calendar day of each month for payroll periods ending in the preceding month." Id. at 2 (¶ B). The Collection Policies further state that: "In the event that an employer does not provide the Funds with the requisite notice within 20 days of such status change, the Fund[] will charge the employer Health, Legal and Training contributions from the time of status change until such notice is provided." Id. at 3 (¶ F). The CBA also states that if Airway "fails to make required reports or payments to the Funds, the Trustees may . . . take any action necessary . . . to enforce [] such reports and payments." Fund R. 56.1 Statement ¶ 6; CBA at 8.

On June 2, 2021, at 6:30 p.m., Dylan Valle from the Union forwarded an email, previously sent by the Union "to all of the contractors," to Al DePhillips from Airway. ECF No. 46-5 at 1-2. The email stated:

> As you are aware, the Union has made a request for the information below. This information is critical to establish accounts with the 32BJ Health Fund so your eligible employees can begin receiving health insurance on July 1, 2021 as required by New York State law.
>
> To date, your company has not provided this critically needed information.
>
> The purpose of this email is to inform you that if the requested information is not provided to the Union by 5:00 p.m., Wednesday, May 26, 2021[3], the Fund may not be able to provide health insurance to your eligible employees and, in such case, your company runs the risk of not being in compliance with the New York State Health Terminals Act.
>
> If you have questions regarding this request, please do not hesitate to contact me.
>
> ****************
>
> The Union requests the information below from each employer to help inform the Union's decisions during our ongoing negotiations and to assist in the implementation of the requirements of new state laws relating to health insurance and other benefits.

---

[3] The deadlines in the e-mail were not updated or otherwise changed when the e-mail was forwarded to DePhillips, which is why the dates had passed by the time the e-mail was sent on June 2, 2021.

4

> The Union requests this information be provided in an electronic format such as Word or Excel.
>
> As time is of the essence, we request this information be provided no later than May 14, 2021.
>
> For each bargaining unit employee:
>
>> a. Name
>> b. Social security number
>> c. Home address
>> d. Telephone number
>> e. Date of hire
>> f. Seniority date
>> g. Job Classification
>> h. Current hourly pay rate
>> i. Work site
>> j. Number of regularly scheduled hours per week currently
>> k. Shift
>> l. Whether the employee is currently classified as full-time or part-time
>> m. Whether the employee is currently actively employed or on lay off status or any other leave status.
>
> Additionally, for all bargaining unit employees working at LGA or JFK:
>
>> n. Whether the employee was actively employed on December 30, 2020.
>> o. Whether effective July 1, 2021 the employee, if still employed on that date, would receive health insurance per the NY Healthy Terminals Act.
>
> The Union reserves the right to request additional information.
>
> Please let me know if you have any questions regarding this request.

Id.; Fund R. 56.1 Statement ¶ 18. In his e-mail to DePhillips, Valle noted that the Union was "very concerned about ensuring the Healthcare is implemented properly," and asked DePhillips if he could "send the information right away." ECF No. 46-5 at 1.

DePhillips replied to Valle the same day at 6:47 p.m. stating: "As per our discussion. This was done. I will retrieve the information and send it to you in the morning."[4] Id. The next day,

---

[4] At times, Airway marks a fact like this e-mail, which the Fund included in its Rule 56.1 Statement, as disputed. See, e.g., ECF No. 60 ¶¶ 19, 26-24. But Airway fails to point to any

on June 3, 2021, DePhillips sent an e-mail to Valle stating: "As promised. All employees are full time. Schedules vary." Id. at 3-4. DePhillips' e-mail included a list of employees along with the following information:

> Home Department Code; Payroll Company Code; Home Department Description; Payroll Name; Position Status; Hire Date; Job Class Code; Job Class Description; Mapping JC; Primary Address; Home Phone; Birth Date; Regular Pay Rate Amount; Regular Pay Effective Date; Tax ID (SSN); and Gender.

Id. at 5-7.

The Fund took the list provided by DePhillips and uploaded it to the Fund's Employer Self-Service System ("ESS").[5] Fund R. 56.1 Statement ¶ 22.

On June 29, 2021, the Fund's "Employer Relations Department" sent an e-mail to DePhillips and Nancy Ketcham at Airway stating that Airway needed to "[l]og into ESS to review [its] rosters and accounts in ESS for accuracy." ECF No. 46-6 at 2-3. On July 13, 2021, the Fund's Employee Relations Department sent an e-mail to DePhillips and Ketcham again, stating:

> Please log into ESS and verify the Roster, Job Class, Job Type and the Wage Rate are accurate for [Airway's] employees immediately. Please review your roster and

---

record evidence to support its dispute of this fact. Gym Door Repairs, Inc. v. Young Equip. Sales, Inc., 331 F. Supp. 3d 221, 248 (S.D.N.Y. 2018) (disputing a fact without providing any citation to evidence in the record does not suffice to create a genuine dispute as to that fact). Instead, Airway makes legal arguments or attempts to dispute the legal implication of the e-mail. In such instances, the fact has been deemed admitted, and the Court has quoted directly from the evidence relied on by the Fund (i.e., the e-mail), the authenticity of which Airway has not challenged. See Pape v. Bd. of Educ. of Wappingers Cent. Sch. Dist., No. 07-CV-8828, 2013 WL 3929630, at *1 n.2 (S.D.N.Y. July 30, 2013) (disregarding purported disputes of fact identified because disputes were "improper legal arguments"); EMA Fin., LLC v. AppTech Corp., No. 21-CV-06049 (LJL), 2022 WL 4237144, at *1 (S.D.N.Y. Sept. 13, 2022) (deeming facts admitted where disputes relied on "improper legal argument and unsupported assertions") (citation and internal quotation marks omitted).

[5] ESS is used by employers, like Airway, to report to the Fund which employees are eligible for benefits. Fund R. 56.1 Statement ¶ 11; Airway R. 56.1 Statement ¶ 5.

>  advise the [Fund] of any changes needed to be made. It is important that we receive this information in a timely manner.

Id. at 1-2.

On August 9, 2021, at 1:36 p.m., Luis Tosado at the Fund sent an e-mail to DePhillips and Ketcham at Airway stating:

> First, I will be sending you an email after this one with the rosters for . . . Airway. You will review the rosters are correct. You must verify job classes, job classes [sic], wage rates. Indicate if any member is currently in [sic] any kind of leave or no longer active (terminated). Any update needs to be send [sic] back to me no later than tomorrow Tuesday August 9th [sic] by 5:00 p.m.
>
> Second, In [sic] my next email, I will also include a file in which you will need to add the hours worked for the month of July for all . . . 56 members for Airway.
>
> Third, payment must be made in the Employer Self Service System "ESS" no later than 8/20/21 to avoid any interest fees. You stated Nancy will be returning to the office next week. We would like for Nancy or I believe "Debbie might be stepping in for Nancy" to attend a training on how to use "ESS". [sic] They must sign up for training here: ESS training for Airports Employers.
>
> Please know the agreement has already been signed to comply, qualified members started with benefits as of 7/1/21. Your customers should not be waiting on DOL information to advise you if their member will receive this benefit or not. Members will not be able to opt out.

ECF No. 46-6 at 9-10. Later that same day at 2:20 p.m., Tosado sent an e-mail to DePhillips and Ketcham at Airway stating:

> Follow up from my previous email.
> . . .
> Please see attached rosters and hours worked file. (4 files attached)
> Any discrepancy with the rosters must be send [sic] back to us ASAP, we are already past the due date for these changes.
> . . .
> For the Upload hours files, please just add the hours in columns F and G, must be the same number. Do not delete or add any column. This file must be saved as a csv. comma delimited file.
> This [sic] files must be completed by Tuesday August 17th, 2021. This will allow time for us to assist you on how to upload them into ESS.
> Please email me or call me if you have any questions on the information needed from you to provide us.

7

Id. at 8-9.

The next day, on August 10, 2021, Tosado again sent an e-mail to DePhillips and Ketcham at Airway stating: "Just following up. Please let me know if you have started the process to review the rosters and if you have any questions." Id. at 3. One minute later, DePhillips responded to Tosado's email, stating: "We are working on the process. If there are any further questions I will reach out to you." Id. at 8.

On August 11, 2021, Tosado sent an e-mail to DePhillips and Ketcham at Airway stating: "I haven't received the reviewed roster as of yet. Please know I will be out of the office until Tuesday, please communicate to Kevin Williams kwilliams@32bjfunds.com in regards [sic] to the roster." Id. at 7. Eighteen minutes later, DePhillips responded stating: "Thank you will do." Id. at 6-7.

On August 12, 2021, Kevin Williams at the Fund sent an e-mail to DePhillips and Ketcham at Airway stating: "Following up to confirm if the roster for . . . Airway Maintenance [was] reviewed. Please advise of any discrepancies you may have with the roster as soon as possible." Id. at 6.

On September 7, 2021, Melissa Miranda at the Fund sent an e-mail to DePhillips and Ketcham at Airway regarding "current outstanding invoice[s] and invoice interest for the contribution period of 7/2021." ECF No. 46-7 at 2. On September 26, 2021, Tom Ormsby from the Fund sent an e-mail to Ketcham at Airway stating:

> You currently have delinquent invoices and are required to take action on the V3 Employer Self Service Portal. Please log on to [ESS] and perform the following actions where appropriate to prevent additional interest charges and potential liquidated damages: (1) Update your roster records; (2) Recalculate your invoices; (3) Review and release your invoices; (4) Pay your released invoices.

ECF No. 46-8 at 1-2.

8

For the first time on December 14, 2021, Airway provided a list of employees that should be "terminated in ESS." Fund R. 56.1 Statement ¶ 35; Airway R. 56.1 Statement ¶ 14; ECF No. 52-7 at 1-2. For the employees identified by Airway, the Fund terminated benefits coverage prospectively, beginning on December 14, 2021. ECF No. 52-7 at 1-2; see also Fund R. 56.1 Statement ¶ 36. The Fund enrolled for benefits all employees of Airway for all contribution periods where they were reported as covered in ESS. Fund R. 56.1 Statement ¶ 37.

**B. Procedural History**

The Fund commenced this action on November 18, 2021, seeking to enforce Airway's statutory and contractual contribution obligation, from July 1, 2021, through the date any judgment is entered. See Compl. ¶¶ 11-22. Airway filed its answer on February 8, 2022. See ECF No. 11. On January 18, 2023, the parties consented to the undersigned's jurisdiction and the case was reassigned. See ECF Nos. 28 and 29. Discovery in this matter closed on June 12, 2023. See ECF No. 38.

On August 18, 2023, the Fund and Airway filed separate motions for summary judgment. ECF No. 45 (Fund's motion); ECF No. 51 (Airway's motion). The parties filed their respective oppositions on September 19, 2023. ECF No. 58 (Airway's opposition); ECF No. 59 (Fund's opposition). On October 3, 2023, the parties filed replies in further support of their motions. ECF No. 69 (Fund's reply); ECF No. 70 (Airway's reply).

The Fund seeks summary judgment on its claims for breach of contract and breach of ERISA, and an award from Airway for unpaid contributions, interest, liquidated damages, and attorneys' fees and costs. See ECF No. 49 at 8-15. Airway, for its part, contends that the Fund cannot seek contributions without first conducting an audit of Airway's records to verify which employees are eligible for benefits. See ECF No. 55 at 6-8; see also ECF No. 58 at 9-12; ECF

No. 70 at 5-9. Airway avers that the Fund is demanding contributions from Airway based on a list that the Fund "unilaterally uploaded" on July 1, 2021, and which was "deficient." See ECF No. 70 at 9-10.

## DISCUSSION

### A. Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion . . . is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of demonstrating an entitlement to judgment as a matter of law and identifying the matter or matters that "it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323; Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008).

A fact is material when it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002) (quoting Anderson, 477 U.S. at 248). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Johnson v. Killian, 680 F.3d 234, 236 (2d Cir. 2012) (quoting Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003)) (internal quotation marks omitted); Holcomb v. Iona Coll., 521 F.3d 130, 132 (2d Cir. 2008) (noting that the Court must view all facts "in the light

10

most favorable" to the non-moving party). However, a court is not required to draw any inference that is "blatantly contradicted by the record, so that no reasonable jury could believe it." Scott v. Harris, 550 U.S. 372, 380 (2007).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Jaramillo, 536 F.3d at 145. "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). For a genuine dispute regarding a material fact to warrant a jury trial, there must be sufficient evidence supporting the claimed factual dispute "to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo, 22 F.3d at 1224.

The Court "need not enter judgment for either party" when cross-motions for summary judgment are filed. Morales v. Quintel Ent., Inc., 249 F.3d 115, 121 (2d Cir. 2001). " Generally, the Court evaluates each cross-motion independently of the other, considering the facts in the light most favorable to the non-moving party." Orbetta, 2023 WL 6386921, at * 7 (citing Morales, 249 F.3d at 121).

B.  **The Fund is entitled to summary judgment on its claims.**

The Fund alleges that Airway was required to pay contributions toward each covered employee's health-benefits coverage as of July 1, 2021. See ECF No. 49 at 8. Airway does not

11

dispute that as of that date, it was required to make contribution payments to the Fund for all covered employees. See Fund R. 56.1 Statement ¶¶ 5, 8-9; Airway R. 56.1 Statement ¶ 3. Airway also does not dispute that it failed to make those contributions. Fund R. 56.1 Statement ¶ 38. Accordingly, the Fund has established that Airway breached the CBA in violation of Section 301 of the LMRA and violated Section 515 of ERISA. See Compl. ¶¶ 11-22. The Fund is thus entitled to unpaid benefit contributions, liquidated damages, interest on the unpaid contributions, and reasonable attorneys' fees and costs pursuant to Section 502 of ERISA. See 29 U.S.C. § 1132(g)(2) (providing for mandatory damages in the amount of unpaid contributions, interest, an amount equal to the greater of interest on the unpaid contributions or liquidated damages provided under the ERISA-governed plan, and reasonable attorneys' fees and costs). The only remaining question concerns the amount of the unpaid benefit contributions and related damages. Under the Fund's Collection Policies, Airway was required to provide the Fund with a list of covered employees for whom contributions were required, and failure to do so was a violation of both the CBA and the Collection Policies. Fund R. 56.1 Statement ¶ 6; CBA at 8; ECF No. 46-4 at 3 (¶ E). On June 3, 2021, Airway provided such a list. Fund R. 56.1 Statement ¶¶ 18-21. When the Union sent an e-mail to Airway asking for the relevant employee information, the e-mail specifically stated that the requested "information is critical to establish accounts with the 32BJ Health Fund so your eligible employees can begin receiving health insurance on July 1, 2021 as required by New York State law." ECF No. 46-5 at 1-2; Fund R. 56.1 Statement ¶ 18. Airway responded to the email with a list of employees and the other relevant information requested by the Union for the Fund. See ECF No. 46-5 at 3-7.

    The Fund asserts that the list provided by Airway on June 2, 2021, was provided "for the explicit purpose of enrolling the designated employees for benefits." ECF No. 49 at 9. In arguing

that the Fund's motion for summary judgment should be denied, Airway avers that it did not authorize the Union to provide the list of employees to the Fund for contribution purposes and that the list should not have been uploaded to ESS for purposes of contribution payments. See, e.g., ECF No. 60 ¶¶ 19-30.

As an initial matter, whether the Fund was authorized to upload the list to ESS is, at most, a dispute concerning a non-material fact. There is no dispute that the CBA and Collection Policies required the employer to make contributions to the Fund for the health-insurance benefits of eligible employees and also required the employer to provide a list of eligible employees. Fund R. 56.1 Statement ¶ 6; CBA at 8; ECF No. 46-4 at 3 (¶ E). Which entity was responsible for uploading that list to ESS—the mechanism by which the Fund could collect the employer's contributions for eligible employees—has no bearing on whether Airway had an obligation to make contribution payments to the Fund as of July 1, 2021, for all eligible employees. See Mugan v. Hartford Life Group Ins. Co., 765 F. Supp. 2d 359, 368 (S.D.N.Y. 2011) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.") (citation and internal quotation marks omitted).

Regardless, the e-mail from the Union requesting the list of employees explicitly indicated that the list was necessary to "establish accounts with the [Fund]" so employees could receive health insurance beginning on July 1, 2021. ECF No. 46-5 at 2. And there is no dispute that an employee of Airway sent the Union a list of employees with the necessary information, in response to the Union's request for that information. Id. at 3-7. Although Airway now argues that the employee who sent the list did not authorize the Union to provide the list to the Fund for contribution purposes, see ECF No. 58 at 6; ECF No. 70 at 1, 5. Airway does not point to any

provision of the CBA or Collection Policies that would have required the Union to receive authorization from Airway prior to sharing the list with the Fund. And Airway points to nothing else in the record for which the Fund would have required a list from Airway.

Additionally, whether the Union was authorized to provide the initial list to the Fund is of no moment because there is no dispute that if the list was inaccurate or deficient, Airway could have submitted a revised list or made changes to the "status" of an employee, as provided for in the Collection Policies. See ECF No. 46-4 at 3 (¶ F). Indeed, between July and September 2021, the Fund contacted Airway numerous times, asking for Airway to check the accuracy of the list and seeking any revisions from Airway. ECF No. 46-6 at 1-2, 6-10; ECF No. 46-7 at 2; ECF No. 46-8 at 1-2. Airway has pointed to nothing in the record indicating that, prior to December 14, 2021, it notified the Fund that the list contained employees that were not eligible for benefits. Nor has Airway pointed to anything in the record indicating that it exercised its right under the Collection Policies to submit a change to the list of employees based on an employee's change in employment status, prior to December 14, 2021. See ECF No. 46-4 at 3 (¶ F).

Airway repeatedly argues that it notified the Fund of the "defective roster" and the Fund "refused to correct the roster based on" Airway's reporting. See, e.g., ECF No. 55 at 1, 9; ECF No. 58 at 1; ECF No. 70 at 2, 9. But to support this assertion, Airway cites to only its e-mail from December 14, 2021. ECF No. 52 ¶¶ 16-17. There is no evidence in the record that Airway took any steps to correct any deficiencies in the employee list prior to December 14, 2021. And to the extent the changes to an employee's eligibility—first raised by Airway in its December 14, 2021 e-mail—concerned a change in the employee's status that occurred more than 20 days prior to December 14, the Collection Policies provide that the Fund "will charge the employer" for contributions for those employees "from the time of status change until such notice is provided."

14

See ECF No. 46-4 at 3 (¶ F). The Collection Policies thus allow the Fund to charge Airway for contributions between the time of an employee's status change and the date notice of that change was provided to the Fund. Finally, there is no dispute that when Airway notified the Fund that certain employees had been terminated and thus were ineligible for benefits, the Fund ended their coverage (and Airway's contribution obligation for those employees) prospectively from December 14, 2021.

Airway also asserts that it was "forced into delinquency" because it could not make partial contribution payments and it "refused" to pay for employees who were ineligible. ECF No. 58 at 7-8; see also ECF No. 55 at 9 n.2. But this argument ignores that there is no evidence in the record that Airway took any efforts to correct the list of employees prior to December 14, 2021. Any dispute over which party had the obligation to change the employee roster in ESS concerns a nonmaterial fact, the resolution of which does not preclude summary judgment in the Fund's favor. The record bears out that changes in ESS—by either party—could only be made once Airway brought any inaccuracies or deficiencies in the list to light. And there is no evidence in the record that Airway attempted to correct any errors prior to December 14.

Lastly, Airway argues that the Fund's motion for summary judgment should be denied because the Fund cannot seek contribution payments without first conducting an audit. ECF No. 55 at 6-11; ECF No. 58 and 6-12; ECF No. 70 and 3-9. But Airway has not pointed to any case suggesting that an audit would be required under the factual circumstances presented here. "ERISA places no requirement on a multi-employer fund to audit every employer." Wilkins v. Mason Tenders' Dist. Council Pension Fund, No. 03-CV-1581 (JG), 2005 WL 783064, at *5 (E.D.N.Y. Apr. 7, 2005). And Airway has not pointed to any case law to suggest that an audit was a condition precedent to the Fund bringing this suit. The cases that Airway relies on for its

"audit-first" position are distinguishable. Those cases concerned a fund that sued to compel an audit, a fund that sued because an audit was not performed as required by the governing plan, or a fund that sued for delinquent contributions revealed by an already-performed audit.[6] See Empire State Carpenters Welfare, Pension, Annuity, Apprenticeship, Charitable Tr., Lab. Mgmt. Cooperation & Scholarship Funds v. Creative, No. 10-CV-00582 (ADS) (GRB), 2012 WL 4482815, at *2 (E.D.N.Y. Aug. 31, 2012) (seeking delinquent contributions that were revealed by an audit of defendant's records); Mason Tenders Dist. Council Welfare Fund v. A.G.I., Inc., No. 03-CV-1238 (RLC)(KNF), 2005 U.S. Dist. LEXIS 8354 (S.D.N.Y. Apr. 29, 2005) (alleging that defendants failed to conduct an audit as required by the governing plan); Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Arista Plumbing Heating & Piping Corp., No. 12-CV-5130 (SLT)(VMS), 2013 U.S. Dist. LEXIS 185821 (E.D.N.Y. Feb. 10, 2013) (filing suit to compel compliance with audit requirement); Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Engineers, Local 15, 15A, 15C & 15D, AFL-CIO v. Eastport Excavation & Utilities Inc., 3 F. Supp. 3d 204 (S.D.N.Y. 2014) (seeking deficient contributions discovered after an audit).

The Fund has not sued to compel compliance with an audit. Nor is an audit mandated under the CBA or the Fund's Collection Policies. The CBA is silent on the issue of an audit. The Fund's Collection Policies provide for an audit in two circumstances: (1) "regular audits performed of selected employers to confirm that the employers are making accurate reports" and "audits performed for cause." ECF No. 52-4 at 4 (¶ A). While the Fund's Collection Policies

---

[6] Airway provided citations to Lexis Nexus for these cases. Where the Court was able to find the cases on Westlaw, those citations are provided. Some cases, however, were not available on Westlaw and thus a Lexis Nexus citation is provided.

permit the performance of such audits, it does not mandate them. And the Fund is not seeking to confirm whether Airway has made accurate reporting of eligible employees.

Beyond disputing that the Fund cannot seek contributions payments based on the employee list from July 2021 that was ultimately uploaded to ESS, Airway does not dispute the total amount sought by the Fund. The Fund seeks $2,520,608.08 in unpaid contributions. ECF No. 55 at 8. The Fund also seeks interest on the unpaid principal and on the principal untimely paid by Airway[7] in the amount of $254,683.28.[8] Id. at 12. Additionally, the Fund requests liquidated damages under ERISA in the amount of $813,876.20.[9] Id. at 13. Lastly, under ERISA and the CBA, the Fund seeks an award of attorneys' fees for an unspecified amount and costs in the amount of $470.[10] Id. at 14-15. These figures are for the time period of July 1, 2021, through August 18, 2023, the date on which the Fund filed its motion for summary judgment. Id. at 5-6. In the complaint, the Fund seeks payment of all unpaid contributions and associated damages through the date judgment is issued. See Compl. ¶ 15. Given that nearly six months have passed since the filing of the Fund's motion for summary judgment, all of the figures provided (except

---

[7] According to the ESS reporting, there are instances where Airway paid the principal late, but failed to pay the associated interest. See ECF No. 55 at 12. The Fund seeks this interest as well. Id.

[8] "Interest on unpaid ERISA contributions is calculated by the rate provided under the operative employee benefit plan." UNITE HERE Ret. Fund v. Edward Vill. Grp., LLC, No. 21-CV-2141 (LJL), 2021 WL 5414972, at *4 n.2 (S.D.N.Y. Nov. 16, 2021) (citing 29 U.S.C. § 1132(g)). The Collection Policies set the interest rate at nine percent annually. See ECF No. 46-4 at 3 (¶ A).

[9] Under the Collection Policies, the Fund is entitled to liquidated damages of 20% "of total principal due" unless the employer's delinquency is "resolved without the need for arbitration or litigation." ECF No. 46-4 at 4 (¶ B).

[10] The Collection Policies provide for the recoupment of attorneys' fees and court costs if an employer fails to pay required contributions and the Fund needs to institute an action to collect payment. ECF No. 46-4 at 4 (¶ C).

for the $470 for costs of suit) are stale and updated figures are required in order for the Court to issue a judgment with an accurate amount owed to the Fund.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** summary judgment in favor of the Fund and **DENIES** Airway's cross-motion for summary judgment. Airway is liable to the Fund for unpaid contributions, interest, liquidated damages, and reasonable attorneys' fees. Airway is also liable to the Fund for $470 in costs.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 45 and 51.

**SO ORDERED.**

DATED:   New York, New York
         **March 4, 2024**

_____
VALERIE FIGUEREDO
United States Magistrate Judge